**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **vs.** | ) | **No. 08 CR 846** |
| | ) | **Honorable Joan H. Lefkow** |
| **JON BURGE** | ) | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S OBJECTIONS
TO PRESENTENCE INVESTIGATION REPORT AND
SENTENCING POSITION PAPER**

**TABLE OF CONTENTS**

**I.**    **The Probation Officer Correctly Calculated the Guidelines**............................1

     **A.**    *Background*........................................................................1

     **B.**    *The cross-references are not applicable*.....................................4

     **C.**    *The government has failed to prove that the offense level should be
          dramatically increased based on a "relevant conduct approach"*..........11

     **D.**    *Because the probation officer correctly determined that the cross-
          references are inapplicable, the government's proffered accessory
          after the fact, civil rights and aggravated assault calculations are
          irrelevant*........................................................................15

**II.**    **Downward Deviation from the Guidelines is Appropriate**............................16

**III.**   **Preservation of Points**.........................................................................21

## TABLE OF CASES

*Booker v. United States*, 543 U.S. 220 (2005)....................................................................22

*Garrity v. New Jersey*, 385 U.S. 493 (1967)......................................................................22

*Griffin v. California*, 380 U.S. 609 (1965)...........................................................................4

*Hinton v. Uchtman*, 395 F.3d 810 (7th Cir. 2005)............................................................20

*Kimbrough v. United States*, 552 U.S. 85 (2007)...............................................................19

*Shepard v. United States*, 544 U.S. 13 (2005)....................................................................21

*Spears v. United States*, -- U.S. --, 129 S.Ct. 840 (2009)..................................................19

*Toussie v. United States*, 397 U.S. 112 (1970)...................................................................17

*United States v. Aguilar*, 515 U.S. 593 (1995)...............................................................10-11

*United States v. Avila*, 465 F.3d 796 (7th Cir. 2006)........................................................13

*United States v. Bacallao,* 149 F.3d 717 (7th Cir. 1998)..................................................12

*United States v. Bertoli*, 40 F.3d 1384 (7th Cir. 1994)...............................................10, 21

*United States v. Blitch,* 622 F.3d 658 (7th Cir. 2010)......................................................19

*United States v. Bova*, 350 F.3d 224 (2d Cir. 2003).......................................................7-10

*United States v. Bullock*, 454 F.3d 637 (7th Cir. 2006)...................................................12

*United States v. Corson*, 579 F.3d 804 (7th Cir. 2009)....................................................19

*United States v. Demaree*, 459 F.3d 791 (7th Cir. 2006).................................................21

*United States v. Duarte*, 950 F.2d 1255 (7th Cir. 1991)...................................................13

*United States v. Ebbole*, 917 F.2d 1495 (7th Cir. 1990)..............................................14-15

*United States v. Flemmi*, 402 F.3d 79 (1st Cir. 2005).......................................................9

*United States v. French*, 46 F.3d 710 (8th Cir. 1995)........................................................9

*United States v. Gallimore*, 491 F.3d 871 (8th Cir. 2007).................................................7

*United States v. Kumar*, 617 F.3d 612 (2d Cir. 2010)....................................................21

*United States v. Lanham*, 617 F.3d 873 (6th Cir. 2010)...............................................21

*United States v. LeMoure*, 474 F.3d 37 (1st Cir. 2007)..............................................5-6

*United States v. Leon-Reyes*, 177 F.3d 816 (9th Cir. 1999)............................................9

*United States v. Lewis*, 606 F.3d 193 (4th Cir. 2010)................................................21

*United States v. Mankiewicz*, 122 F.3d 399 (7th Cir. 1997).........................................13

*United States v. McGowan*, 478 F.3d 800 (7th Cir. 2007)............................................12

*United States v. McQueen*, 86 F.3d 180 (11th Cir. 1996)...........................................6-7

*United States v. Messino*, 382 F.3d 704 (7th Cir. 2004)............................................21

*United States v. Plumley*, 207 F.3d 1086 (8th Cir. 2000)...........................................13

*United States v. Ortiz*, 621 F.3d 82 (2d Cir. 2010).....................................................21

*United States v. Ortland,* 109 F.3d 539 (9th Cir. 1997)............................................21

*United States v. Rhonda*, 455 F.3d 1273 (11th Cir. 2006)..........................................5-6

*United States v. Rodriguez*, 2010 WL 5297173 (1st Cir. 2010)..................................21

*United States v. Salerno*, 505 U.S. 317 (1992)........................................................5, 10

*United States v. Suleiman*, 208 F.3d 32 (2d Cir. 2000)..............................................9-10

*United States v. Sykes*, 7 F.3d 1331 (7th Cir. 1993).................................................12

*United States v. Turner*, 548 F.3d 1094 (D.C. Cir. 2008)...........................................21

*United States v. Vivit,* 214 F.3d 908 (7th Cir. 2000)................................................21

*United States v. White*, 888 F.2d 490 (7th Cir. 1989)............................................12-13

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **vs.** | ) | **No. 08 CR 846** |
| | ) | **Honorable Joan H. Lefkow** |
| **JON BURGE** | ) | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S OBJECTIONS
TO PRESENTENCE INVESTIGATION REPORT AND
SENTENCING POSITION PAPER**

**I.     The Probation Officer Correctly Calculated the Guidelines**

    **A.     *Background***

Defendant Jon Burge was convicted of two counts of obstruction of justice, 18 U.S.C. § 1512(c)(2), and one count of perjury, 18 U.S.C. § 1621(1).  Each count was based upon notarized answers to interrogatories signed by Burge and submitted to plaintiff's counsel during discovery in a federal civil lawsuit filed against Burge and others by Madison Hobley.

Following the jury's verdict, this Court referred the case to the United States Probation Department for the preparation of a pre-sentence investigation report ("PSR").  The government submitted a version of the offense to the probation department in which it sought application of punitive sentencing guidelines for aggravated assault, rather than the guidelines applicable for obstruction and perjury.  According to the government, Burge's guidelines range came in at Level 40 (292 to 365 months imprisonment) – tantamount to life imprisonment for 63-year-old, cancer-stricken Burge.

Burge objected to the government's far-fetched position.  In his version of the offense, Burge asserted that the guidelines for perjury and obstruction governed.

Applying these guidelines in straightforward fashion, Burge placed the combined adjusted offense level at Level 14 (not including a two-level enhancement for obstruction of justice, U.S.S.G. § 3C1.1).

The probation officer carefully considered the parties' positions, and determined that Burge's offense level is Level 14. (The probation officer deemed it appropriate to leave the decision regarding a two-level § 3C1.1 enhancement to the Court.) The probation officer found U.S.S.G. § 2J1.2 to be the guideline applicable to the obstruction convictions (Counts 1 and 3). Section 2J1.2(a) sets the base offense level at Level 14. PSR 13, 15. The probation officer found no § 2J1.2 specific offense characteristics applicable, and applied no other upward adjustments. PSR 13-15.

Concerning the perjury conviction (Count 2), the probation officer concluded that § 2J1.3 is the correct guideline. Section 2J1.3(a) sets the base offense level at Level 14. PSR 14. Again, the probation officer determined that no specific offense characteristics are applicable, and applied no other upward adjustments. PSR 14-15.

The probation officer next applied grouping rules, U.S.S.G. § 3D1.4. PSR 16. Because each of the counts of conviction related to interrogatory answers in *Hobley v. Burge*, the probation officer grouped all three counts. Application of the grouping rules did not result in an increase in the combined adjusted offense level. PSR 16. Accordingly, the probation officer set Burge's combined adjusted offense level at Level 14. Given that Burge has a Criminal History Category I score, the advisory sentencing range is 15 to 21 months imprisonment. PSR 29.

Burge does not object to these calculations. The government, however, does. It again shoots for the moon, and seeks effective life imprisonment (Level 40). The

government's effort to tack on an additional 26 levels to Burge's offense level is predicated in § 2J1.2 and § 2J1.3 cross-references. As the probation officer reasoned, and as will be seen, these cross-references do not take the offense level calculations outside the obstruction and perjury guidelines.

The cross-reference in § 2J1.2(c)(1) provides:

> If the offense involved obstructing the investigation or prosecution of a criminal offense, apply §2X3.1 (Accessory-after-the-fact) in respect to that criminal offense, if the resulting offense level is greater than that determined above.

The cross-reference in § 2J1.3(c)(1) provides:

> If the offense involved perjury, subornation of perjury, or witness bribery in respect to a criminal offense, apply §2X3.1 (Accessory-after-the-fact) in respect to that criminal offense, if the resulting offense level is greater than that determined above.

The probation officer thoroughly considered the government's arguments, but rejected supplication that the cross-references apply because the *Hobley* interrogatory answers were submitted during the same time period a Special Prosecutor was conducting an investigation. PSR 12-13. The probation officer reasoned as follows:

> This officer notes that the defendant's false statements were made in answers to interrogatories during the discovery period in a civil matter. Even though a special prosecutor was conducting an inquiry into allegations of torture and abuse by the defendant, his former colleagues and subordinates, the defendant's obstructive answers were not made to law enforcement officials involved in a criminal investigation or prosecution, nor were the answers presented to a criminal grand jury. As such, this officer respectfully declines to employ the cross reference contained at §2J1.2(c)(1).

> This officer also respectfully declines to employ the cross reference contained at § 2J1.3(c)(1). Once more, the defendant's false answer to interrogatories, as alleged in Count Two, were made in relation to the discovery process in a civil matter. While the defendant indeed perjured himself, as found by the jury, this officer respectfully opines that said perjury specifically involved civil allegations made during the course of a

3

civil suit.  For the reasons set forth above, this officer again respectfully declines to cross reference from §2J1.3 to other guidelines.

PSR 12-13.

**B.** *The cross-references are not applicable*

The probation officer did not err.  To apply a § 2J2.2(c)(1) cross-reference, the offense of conviction must have "involved obstructing the investigation or prosecution of *a criminal offense*."  Similarly, to apply the § 2J1.3(c)(1) cross-reference, the offense of conviction must have "involved perjury, subornation of perjury, or witness bribery in respect to *a criminal offense*."  Stating the obvious, *Hobley v. Burge* was not a criminal case.  Because *Hobley v. Burge* was a civil case, it simply is not covered by the cross-references.

The government has not shown, nor could it, that Burge attempted to stymie the Special Prosecutor's work.  While Burge was subpoenaed to testify before the special State grand jury, he invoked the privilege against self-incrimination.  See Special Prosecutor's Report 14.  This country has a long tradition of attaching no criminal punishment to an invocation of the privilege against self-incrimination.  *E.g., Griffin v. California*, 380 U.S. 609 (1965).  Such invocation is neither perjury nor obstruction of justice.

The government's approach is akin to throwing mud on the wall in hopes something will stick.  On one hand, the government accuses the probation office of "mechanically applying U.S.S.G. §2J1.2 and §2J1.3," Govt's Obj. 4, and taking an "unjustifiably cabined view" of the cross-references.  *Id*. at 5.  At the same time, it urges a "plain reading of the guideline."  *Id*. at 6.

4

We agree that plain language governs. *E.g. United States v. Salerno*, 505 U.S. 317, 322 (1992) ("we must enforce the words … enacted"). That is what the probation officer did. By so doing, he did not resort to unjustifiable "mechanical" or "cabined" application. Rather, the plain language of both guidelines mandates that the obstruction or perjury occur the investigation or prosecution of, or in relation to, a "criminal offense." Here, in supplying the answers to interrogatories in *Hobley*, Burge did not take any action involving the investigation or prosecution of a criminal offense, or in relation to a criminal offense.

The government insists that "[t]here is no stated (or implied) requirement that the obstructive conduct must have occurred within the confines of a criminal investigation for the cross-reference to apply." Govt's Obj. 7. This assertion overlooks plain language. Both § 2J1.2(c)(1) and § 2J1.3(c)(1) expressly require a connection between the offense conduct and a criminal offense. The probation officer did not misread the guidelines.

In the section of its objection addressing the obstruction cross-reference, the government says that it "has not found any case directly addressing the factual situation in the instant case – the application of the cross-reference when obstructive conduct occurred within a civil case."[1] Govt's Obj. 8 n. 3. The two cases "found" by the government (*United States v. LeMoure*, 474 F.3d 37 (1st Cir. 2007), and *United States v. Rhonda*, 455 F.3d 1273 (11th Cir. 2006)) actually reflect non-application of cross-references where the obstructive conduct occurred in civil cases.

---

[1] The absence of cases (in the 23-plus years since the guidelines' effective date) is explainable by the plain non-applicability of the cross-references in circumstances such as those here.

5

In *LeMoure*, a police officer beat a citizen during a traffic stop. The citizen complained to internal affairs. The officer and another officer sought out individuals to give false statements. The citizen filed a civil lawsuit. In depositions in the civil case, the "witnesses" gave false testimony or affirmed their prior statements. The civil case settled and a grand jury investigation began. The officers attempted to get the "witnesses" to stick to their stories in the grand jury and gave one $7,000 for attorney fees. The witnesses ultimately testified truthfully in the grand jury. The officers were convicted of charges relating to the efforts to obstruct/suborn perjury in the grand jury, as well as in the civil case.

On appeal, the court addressed a sentencing argument. The court pronounced, "[T]he guidelines required separate calculations for one group of offenses related to the civil case and another to the grand jury proceeding." *LeMoure*, 474 F.3d at 44-45. While the court affirmed the application of a § 2J1.2(c)(1) cross-reference, it did so with respect to the group of offenses relating to the criminal investigation. At no point did *LeMoure* intimate that the § 2J1.2(c)(1) cross-reference had applicability to the "civil case" counts.

In *Rhonda*, the defendant/police officer was convicted of obstruction based on statements given in a civil deposition about a wrongful shooting death. As the government acknowledges, the district court applied the base offense level in § 2J1.2 "without employing the cross-reference found at §2J1.2(c)." Govt's Obj. 8 n. 3.

The government says that the Seventh Circuit has not visited the obstruction cross-reference issue, but that other circuits have applied the cross-reference in "broad fashion." Govt's Obj. 7-8. The cases cited by the government are inapposite. It is not our argument that the cross-reference cannot be applied to acquitted conduct. See *United*

*States v. McQueen*, 86 F.3d 180, 182 (11th Cir. 1996). *United States v. Gallimore,* 491 F.3d 871 (8th Cir. 2007), is factually and legally inapposite. There, an informant provided grand jury testimony that led to a large drug conspiracy indictment. A defendant in the drug case and the appellant assaulted the informant as retaliation for the grand jury testimony. The court of appeals dismissed the appellant's contentions that the § 2J1.2(c) cross-reference did not apply because the victim was not less likely to testify in the criminal case because of the assault, and because intent to obstruct was not an element of the charged offenses. The issue in this case is different. Moreover, the connection between the *Gallimore* appellant's conduct and a criminal investigation/prosecution is readily apparent.

Cases cited in the perjury section of the government's objection do not stand for the proposition that the cross-reference would be applicable under the present circumstances. Surprisingly absent from the government's objection is discussion of *United States v. Bova*, 350 F.3d 224 (2d Cir. 2003). In *Bova*, the defendant was arrested for allegedly violating his federal supervised release by stabbing another individual. The defendant was freed after a district court found the stabbing incident unproven. Three days later the defendant was arrested for another supervised release violation based on the alleged stabbing of another individual. The defendant appeared before a magistrate judge for the sole purpose of determining whether he should be released on bail. At that hearing, the defendant testified in his own behalf. Based on testimonial denials that he had assaulted the aforementioned individuals, the defendant was indicted for two counts of perjury and one count of obstruction of justice. The defendant conditionally pled guilty to these charges. The government cross-appealed from the sentence.

7

On appeal, the government argued "that the district court should have followed the probation officer's calculation and applied the cross-reference in the perjury guideline …" 350 F.3d at 229. As in this case, the cross-reference (to aggravated assault guidelines) potentially had "dramatic effects" on the sentence. The government in *Bova* contended that the cross-reference was applicable because the defendant had testified about assaults. Like the government here, the government conceded a dearth of precedent, and maintained that the guidelines' language dictated the desired result. *Id*. at 230. The court of appeals responded to this by stating: "In truth, phrases like 'in respect to' or 'in connection with' are highly elastic and any sensible construction invites inquiry into what the drafter was trying to accomplish." *Id*.

Although the court recognized that the purpose of the cross-reference was not narrow, it held that the cross-reference did not apply. The court pointed out that because the defendant's false testimony occurred in a bail hearing in the context of a violation of supervised release proceeding, the government had not argued that the defendant's testimony occurred in "a proceeding to adjudicate a criminal offense." *Id*. The court rejected the government's position that the cross-reference applied because "the perjury was *about* a criminal offense, namely, the assaults." *Id*. (emphasis original). The court continued:

> But it misses the point to make the subject matter of the perjury, rather than its connection to the prosecution of a criminal offense the decisive consideration. A material lie about any subject in a criminal trial could sensibly trigger the cross-reference; a lie in a civil or other non-criminal proceeding about a criminal act, at least if not a direct threat to a criminal trial or investigation, deserves no more punishment than a lie about a non-criminal act.

*Id*. at 230-31.

8

*Bova* evidences that the perjury must occur in connection with the adjudication of a criminal offense for the cross-reference to apply.  Indeed, the case for application of the cross-reference was stronger in *Bova* than here in that the defendant testified in a bail proceeding for an alleged supervised release violation.  Here, in contrast, the *Hobley v. Burge* answers were not given in any sort of criminal proceeding.  That there may have been a collateral grand jury investigation (in another sovereign) is not a sufficient circumstance to merit application of the cross-references, especially in light of the fact that the offenses of conviction do not relate to any actions designed to influence that investigation.

The cases the government cites in the perjury section of its objection do not provide authority for the result the government seeks.  In *United States v. Leon-Reyes*, 177 F.3d 816 (9th Cir. 1999), the defendant *testified in a criminal case* in which the defendants were charged with drug trafficking and money laundering.  The Ninth Circuit spurned a government appeal of the district court's decision that the defendant's criminal case testimony affected only the money laundering charges, and not the drug trafficking charges.  *Id*. at 824.  *United States v. Flemmi*, 402 F.3d 79 (1st Cir. 2005), involved assessment of the obstruction cross-reference, as opposed to the perjury cross-reference.  In any event, the *Flemmi* defendant testified before a grand jury, and the court of appeals concluded that his testimony obstructed the "*prosecution* of a criminal offense."  *Id*. at 96 (emphasis in original).  Similarly, the defendant in *United States v. Suleiman*, 208 F.3d 32, 39 (2d Cir. 2000), testified before a grand jury investigating a criminal offense.  Lastly, *United States v. French*, 46 F.3d 710 (8th Cir. 1995) is inapposite.  That case did not involve analysis of the perjury cross-reference; rather, a government appeal of the

9

district court's ruling giving the defendant sentence credit for a State perjury conviction was at issue.

Unable to cite an on-point case, the government resorts to an unconvincing "stated purpose" argument. Contrary to the implications of the government's point, guideline language must be enforced as written. The Court "cannot alter … rules merely because litigants might prefer different rules in a particular class of cases." *Salerno*, 505 U.S. at 322. In addition, the cross-references' purpose is to increase punishment when a defendant attempts to throw a monkey wrench into a *criminal* investigation or prosecution. *Bova*, 350 F.3d at 229-30; see also *Suleiman*, 208 F.3d at 39.[2] An alleged amorphous desire to avoid punishment is not the triggering event for the cross-references. Here, because the *Hobley* answers did not constitute an attempt to derail a criminal investigation or prosecution, the purpose of the cross-references is not implicated.

The government also claims that the well-publicized nature of the Special Prosecutor's investigation somehow made Burge aware that discovery answers in a federal civil suit had potential to obstruct the State investigation. There are a host of problems with this argument. At the outset, when brought before the State grand jury, Burge asserted his constitutional right to silence – he took no actions and made no attempt to obstruct the grand jury. Furthermore, "knowledge of possibility" is not the test for either cross-reference.

*United States v. Aguilar*, 515 U.S. 593 (1995), fortifies non-application of the cross-references. There, FBI agents visited a federal judge, and questioned

---

[2]    The parenthetical quotation from *United States v. Bertoli*, 40 F.3d 1384, 1407 n. 20 (7th Cir. 1994), cited by the government, references a *criminal case*, as does commentary to § 2J1.2 and § 2J1.3.

him about whether he had disclosed a wiretap investigation or attempted to influence a habeas corpus case. The judge lied to the agents about both subjects and was convicted of obstruction of justice, 18 U.S.C. § 1503. The Supreme Court ruled that the judge's conduct did not amount to obstruction of justice, stating, "We do not believe that uttering false statements to an investigating agent – and that seems to be all that was proved here – who might or might not testify before a grand jury is sufficient to make out a violation of the catch-all provision of § 1503." 515 U.S. at 600.

Similar considerations are at work here. The *Hobley* civil case was not joined with the Special Prosecutor's investigation. Hobley's lawyers were not grand jury agents. Just as the judge's statements to the FBI agents in *Aguilar* did not constitute obstruction of a grand jury proceeding, the answering of interrogatories in *Hobley* did not amount to perjury or obstruction in relation to the special grand jury. That the Special Prosecutor's investigation was well-publicized is not a reason to bring this case within the framework of the cross-references.

### C. *The government has failed to prove that the offense level should be dramatically increased based on a "relevant conduct approach"*

Having failed to present a convincing argument for adding 26 levels to the stated offense level for obstruction and perjury, the government briefly posits a "relevant conduct approach." See Govt's Obj. 10-11. Again, the probation officer disagrees with the government. The probation officer stressed that the matters cited by the government "predated the instant offense conduct by 14 to 21 years, and were not committed during the commission of the instant offense, or in the course of attempting to avoid responsibility for the instant federal offense." PSR 16. The probation officer further

11

observed that the offense levels for perjury and obstruction are not driven by a measure of ongoing aggregate harm (*e.g.*, loss, gain or drug amounts). PSR 17. The probation officer also found that the earlier proceedings "were not part of the same course of conduct or common scheme or plan as the offenses of conviction." *Id*.

The government has not established that the probation officer erred. The separation between the convicted conduct and the alleged relevant conduct incidents dooms any relevant conduct finding. See, *e.g., United States v. McGowan*, 478 F.3d 800, 802 (7th Cir. 2007) (vacating sentence where district court erroneously found drug sales occurring eight months before sales of which defendant was convicted were relevant conduct, explaining the "gap is long enough to cast doubt on the relevance of the earlier conduct"); *United States v. Bullock*, 454 F.3d 637, 641 (7th Cir. 2006) (insufficient showing that cocaine transactions taking place two miles away and two years after the charged conspiracy constituted relevant conduct); *United States v. Bacallao,* 149 F.3d 717, 720 (7th Cir. 1998) (court notes that "we must be cautious and exacting in permitting ... relatively stale dealings to be included in the same course of conduct as the offense of conviction," and rules that the PSR did not sufficiently show how two prior drug transactions were part of same course of conduct or common scheme or plan as offense of conviction); *United States v. Sykes*, 7 F.3d 1331, 1336-37 (7th Cir. 1993) (finding 14-month interval between false loan applications too attenuated for relevant conduct purposes when "a stronger showing of both regularity and similarity" was not made, and explaining that the "lengthy time interval here tends to indicate conduct that can easily be separated into 'discrete, identifiable units,' rather than behavior that is part of the same course of conduct or common scheme or plan"); *United States v. White*, 888 F.2d 490,

500 (7th Cir. 1989) ("amounts involved in the 1986 conspiracy may not be used as the basis of a sentence on the 1988 sales"); see also *United States v. Avila*, 465 F.3d 796 (7th Cir. 2006); *United States v. Mankiewicz*, 122 F.3d 399 (7th Cir. 1997); *United States v. Duarte*, 950 F.2d 1255, 1263 (7th Cir. 1991).

The government also cites no controlling authority for its novel position. The non-Seventh Circuit case cited by the government (*United States v. Plumley*, 207 F.3d 1086, 1091 (8th Cir. 2000)) is not at all akin to this case. In *Plumley*, the obstruction conviction was based on conduct that occurred on June 19, 1997 (directing others to lie before the grand jury to support the defendant's earlier grand jury testimony about motorcycle thefts); the proffered relevant conduct incident related to a threat made to another in May 1997 in relation to a pipe bombing investigation. The Eighth Circuit rejected the defendant's arguments that the conviction and relevant conduct behavior were temporally and conceptually disconnected. *Plumley* is a far stretch from this case where the proposed relevant conduct is unconnected to the offense of conviction and relates to non-specific allegations that predate the *Hobley v. Burge* answers by 14 to 21 years.[3]

In addition, the government begs the question and deviates from the guidelines' framework. (The government implicitly acknowledges the fallibility of its "relevant conduct approach" through its "*but compare*" citation signal to § 1B1.1(a)(2). See Govt's Obj. 10.) The first thing a Court must do is "(a) [d]etermine, pursuant to §1B1.2 (Applicable Guidelines), the offense guideline section from Chapter Two (Offense Conduct) applicable to the offense of conviction. See §1B1.2." U.S.S.G § 1B1.1.

---

[3]    For example, absent specificity, the government claims that Burge has denied allegations since the 1970s.

Section 1B1.2 initially directs the Court to "[d]etermine the offense guideline section in Chapter Two (Offense Conduct) applicable to the offense of conviction (i.e., the offense conduct charged in the count of the indictment or information of which the defendant was convicted)," and then apply the relevant conduct provision. U.S.S.G. § 1B1.2(a), (b). The relevant conduct provision, too, is tethered to the "offense of conviction." See U.S.S.G. § 1B1.3. Once the appropriate guideline is selected, the Court must "[d]etermine the base offense level and apply any appropriate specific offense characteristics, cross references, and special instructions contained in the particular guideline in Chapter Two in the order listed." U.S.S.G. § 1B1.1(b).

The offenses of conviction in this case relate to the *Hobley v. Burge* interrogatory answers. The applicable guidelines for those offenses are § 2J1.2 and § 2J1.3. As the probation officer correctly found, statements made in civil and criminal cases many years earlier are not relevant conduct, as the offense levels must derive from offenses of conviction. And it is only after the appropriate guideline is determined that cross-references are applied. See U.S.S.G. § 1B1.1(b).

The government's "approach" puts the cart before the horse. The government seeks to *select* the guideline based on matters other than the offenses of conviction. The government's position smacks of the criticized practice of trying a defendant for a less serious offense, and then seeking to have him sentenced as if he were convicted of more serious offenses not found beyond a reasonable doubt by a jury. As the Seventh Circuit stated in a pre-*Booker* case:

> [The relevant conduct provision] "obviously invite[s] the prosecutor to indict for less serious offenses which are easy to prove and then expand them in the probation office." *Miller,* 910 F.2d at 1332 (Merritt, C.J., dissenting). In *Ebbole's* case, the United States Attorney's office appears

14

> to have accepted this dubious invitation. Since *McMillan* precludes us from invoking the Constitution to condemn this practice, we can only seek (again-see *United States v. Fischer,* 905 F.2d 140, 141-42 (7th Cir.1990) (*per curiam*)) to impress upon prosecutors that such tactics will inevitably prove counterproductive, reducing incentives for defendants to cooperate with the government, and ultimately impairing, rather than improving, the efficiency of the federal criminal justice system.

*United States v. Ebbole*, 917 F.2d 1495, 1501-02 (7th Cir. 1990).

Finally, the government again posits a "purpose" argument. While the purpose professed by the government is at odds with *Ebbole,* the guidelines must be applied as written and not in a manner to achieve a result. That the application of the obstruction and perjury guidelines to the offenses of conviction does not achieve the draconian result sought by prosecutors is not a reason to turn the relevant conduct provision on its head.

> **D.** **Because the probation officer correctly determined that the cross-references are inapplicable, the government's proffered accessory after the fact, civil rights and aggravated assault calculations are irrelevant**

The government devotes a large part of its response proffering guidelines for accessory after the fact, civil rights and aggravated assault. Given that the cross-references do not apply, these guideline calculations are not germane.

Burge has provided factual and legal responses to the government's irrelevant guideline points in his version (appended to the PSR). We respectfully incorporate the version herein by reference.

For present purposes it also bears noting that the jury's verdict cannot be treated as an indication that the government proved specific incidents of abuse by Burge beyond a reasonable doubt. See Deft's Vers. 4-5. In addition to what is argued in Burge's version, this much is made clear from certain jurors' post-verdict letters.

15

**II.**     **Downward Deviation from the Guidelines is Appropriate**

      A.     Burge moves for downward deviation from the guidelines range based on 18 U.S.C. § 3553(a). The following factors merit a below-guidelines sentence:

      ***Dedication and service to this country***  When many were seeking "deferrals" from military service, Burge volunteered and accepted military duty. See PSR 1, 24-25. He saw combat and honorably served this Country (in Korea and Vietnam) in times of war. He attained the rank of staff sergeant, and received the Bronze Star medal for actions taken in ground operations against hostile forces, as well as four Army Commendation medals.

      One of the records underlying a commendation medal describes how Burge risked his own life by braving flying shrapnel to evacuate wounded troops and fight fires caused by incoming artillery rounds. PSR 25. As the PSR aptly notes, "Our nation has a long tradition of according leniency to veterans in recognition of their service, especially for those who fought on front lines." PSR 31 (quoting *Porter v. McCollum*, 130 S.Ct. 455 (2009)).

      ***Poor health***  The PSR spends almost two pages discussing Burge's physical condition. See PSR 20-21. As the Court is aware, Burge suffers from prostate cancer. When diagnosed, Burge's Gleason Score was 8 out of 10, with 10 being the most onerous score. The cancer has been described as "high risk," but "localized" at present. While Burge is undergoing treatment and has a favorable prognosis, the earliest his doctors can assess success is approximately two to three years out. PSR 21. (Burge is scheduled to have a "vantas" surgically removed and replaced on April 20, 2011.)

Burge endured replacement of his left knee in 2007.  PSR 20-21.  He underwent the same procedure on his right knee in 2008.  PSR 21.  Burge recently (within the past few weeks) fell and either tore or pulled the medial collateral ligament in his right knee.  On December 31, 2010, Burge dislocated his right knee.  He presently has a knee brace from mid-calf to mid-thigh.

In addition, Burge "has significant back problems including spinal stenosis, scoliosis, degenerative arthritis, spondylolisthesis and a compression fracture."  Exhibit 1.  He also has a positive medical history for atrial fibrillation.  PSR 20.  In 2010, Burge underwent three surgical procedures to remove ganglion cysts from his left hand.  PSR 21.  He presently suffers from chronic obstructive pulmonary disease, congestive heart failure, chronic bronchitis and sleep Apnea.  He is on a variety of medications for his multiple maladies.

***Previous punishment***  Burge was terminated from the police department in 1993.  Stripping Burge of his livelihood – which was his "life" – is and was significant punishment.

***Recidivism and specific deterrence are not issues***  Burge is not in a position to interrogate criminal suspects, and has not been in such a position for almost 20 years.

***Ancient nature of allegations***  The *last* of the five interrogation "incidents" that were the subject of evidence at trial occurred approximately 24 years ago.  Policies underlying the statute of limitations, see generally *Toussie v. United States*, 397 U.S. 112, 114-15 (1970), are ripe for consideration in evaluating the § 3553(a) factors.

17

***Support from others***   Burge has the continued support of loved ones, community members and crime victims.  As part of the sentencing process, Burge will submit character letters.  (Additionally, letters provided by certain jurors do not call for the unduly harsh sentence sought by the government.)

***Unintended consequences***   Violence on Chicago's south-side where Burge worked has again reached truly intolerable levels.  In the past seven months or so, five Chicago police officers have been murdered[4] (including one with his own service revolver *ala* Andrew Wilson's *modus operandi*); even more have been shot.[5]  Children are routinely being slain, caught in the crosshairs of gang warfare.[6]  The situation has gotten so bad that Senator Durbin called upon bringing the FBI to assist in curbing the violence,[7] and the police superintendent even had a "sit-down" with gang leaders.[8]  Unfortunately, whether well-founded or not, the level of trust between the Chicago Police Department and the FBI may not always exist because of prosecutions such as this one, especially where the defendant has already been subjected to police board charges.[9]

---

[4]      http://www.chicagobreakingnews.com/2010/11/chicago-police-shot-in-south-chicago.html

[5]      http://www.suntimes.com/news/24-7/2661362,cops-shot-englewood-090110.article

[6]      http://www.nydailynews.com/entertainment/tv/2010/08/13/2010-08-13_gangs_take_toll_on_chicago_kids.html

[7]      http://articles.chicagotribune.com/2010-07-28/news/sc-dc-0729-chicago-cops-20100728-14_1_mayor-richard-daley-fbi-director-robert-mueller-chicago

[8]      http://www.foxnews.com/us/2010/09/02/chicago-police-chief-criticized-gang-summit/?test=latestnews

[9]      http://www.chicagonewscoop.org/police-chief-in-the-crosshairs-with-contract-in-final-year/

Moreover, hardened criminals and sociopaths are emboldened notwithstanding the outrageousness of their violent conduct. They know they have an "out" by claiming police abuse, and even suing the City to boot.[10] Take the case of Gregory Banks as an example. While he undoubtedly committed the double shooting/murder for which he was prosecuted, in the end, he was let go, awarded money, tried to insist that he was "innocent," and served as a government witness against a police officer who did not even participate in his interrogation.

Take Madison Hobley's case as another example. Although the government possessed evidence that Hobley was really guilty of the arson/murders, and fabricated his way into a pardon and a settlement, it opted to prosecute Burge based on interrogatories propounded in Hobley's civil suit. In so doing, the government embraced the testimony of murderers and hardened criminals. While it is not the Court's purview to direct the government's deployment of prosecutorial resources (*e.g.,* go after violent criminals who are killing police officers, or pursue civil interrogatory answers given by a former police officer who did not participate in the interrogation at issue where the answers were not ever used in court and had no effect on the plaintiff's attorney? see PSR 10), cf. *United States v. Blitch,* 622 F.3d 658, 664 (7th Cir. 2010), *United States v. Corson,* 579 F.3d 804, 806 (7th Cir. 2009), such considerations are not outside § 3553(a). Cf. *Kimbrough v. United States*, 552 U.S. 85 (2007); *Spears v. United States*, -- U.S. --, 129 S.Ct. 840 (2009).

---

[10]    The government has referenced litigation costs in civil lawsuits. That City attorneys decide to settle suits (some times just after the Mayor is ordered to sit for a deposition) is not something that should be held against Burge in sentencing.

B.      In its objections, the government, without asking for an upward deviation from the guidelines, discusses certain § 3553(a) factors.  At the outset, we note that in *Booker's* aftermath, very few cases have resulted in sentences above the guidelines range.[11]  In the end, the Court must sentence Burge for the offenses of conviction – not a caricature created by the press.  Nothing about Burge's convictions warrants a severely enhanced sentence.

The government also cites a "cost" analysis.  But nobody can prevent a devious criminal from filing a specious lawsuit and thus requiring expenditure of resources.  As even the government recognizes, Burge cannot be punished for litigation "decisions made by a large corporate entity."[12]  Govt's Obj. 25.

The government also resorts to language from the concurring opinion in *Hinton v. Uchtman*, 395 F.3d 810, 821 (7th Cir. 2005).  *Hinton* did not address the sentencing of an individual, or consider the appropriate sentence for the offenses in this case, let alone consider the significant mitigation in Burge's background.

The Court must arrive at a reasonable sentence that is sufficient but not greater than necessary to achieve the goals elicited in § 3553(a).  Under the circumstances of this case, it would be patently unreasonable to impose a sentence anywhere near that advocated by the government here.  When mitigation is balanced against the alleged aggravation a downward deviation from the guideline range is appropriate.

---

[11] http://www.ussc.gov/Data_and_Statistics/Federal_Sentencing_Statistics/Quarterly_Sentencing_Updates/USSC_2010_Quarter_Report_4th.pdf

[12]      The government cites settlements in *Howard, Hobley, Orange* and *Patterson*. These cases settled after Magistrate Judge Brown ordered Mayor Richard M. Daley to sit for a deposition.  See http://www.chicagoreader.com/chicago/follow-up-the-meters-still-running-and-the-mayors-still-mum/Content?oid=925394.

### III.   **Preservation of Points**

Burge moves to preserve the following points for future review. See *United States v. Messino*, 382 F.3d 704, 715 (7th Cir. 2004) (Easterbrook, J., concurring) ("When precedent is adverse, a few sentences flagging the point suffice to preserve an argument for resolution by a higher court.").

**Use of hearsay**  The government submits unreliable hearsay information as part of its sentencing submission.  If the Sixth Amendment applies at sentencing, it is difficult to see how its Confrontation Clause component can be disregarded.  All hearsay in the PSR and government's submissions should be stricken.  See *Shepard v. United States*, 544 U.S. 13 (2005).

**Ex Post Facto**  The government's aggravated assault/civil rights sentencing guidelines analysis depends upon allegations concerning events that occurred before the sentencing guidelines' enactment.  Retroactive imposition of stringent sentencing guidelines violates the *Ex Post Facto* Clause.  Compare *United States v. Kumar*, 617 F.3d 612 (2d Cir. 2010); *United States v. Demaree*, 459 F.3d 791 (7th Cir. 2006); and *United States v. Vivit,* 214 F.3d 908 (7th Cir. 2000); with *United States v. Ortiz*, 621 F.3d 82 (2d Cir. 2010); *United States v. Lanham*, 617 F.3d 873 (6th Cir. 2010); *United States v. Lewis,* 606 F.3d 193, 199 (4th Cir. 2010); *United States v. Turner*, 548 F.3d 1094 (D.C. Cir. 2008); *United States v. Bertoli*, 40 F.3d 1384 (3d Cir. 1994); and *United States v. Ortland,* 109 F.3d 539, 547 (9th Cir. 1997); see also *United States v. Rodriguez*, 2010 WL 5297173 (1st Cir. 2010).

**Garrity**  The government tendered the Special Prosecutors reports to the probation officer.  The probation officer used the reports in compiling the PSR.  The

21

Special Prosecutor, however, did not erect any controls or protocols regarding the use of information protected by *Garrity v. New Jersey*, 385 U.S. 493 (1967).  The point of *Garrity* is whether immunized statements have been used or derivatively used against a defendant in a criminal case – not the identity of the prosecutors who hand over the statements.  We continue to object to *any* use or derivative use of immunized statements.

     ***Tail wagging the dog***  A request to add 26 levels to the offense level for the offenses of conviction based upon conduct not charged in an indictment or proved beyond a reasonable doubt to a jury smacks of the tail wagging the dog.  It would violate the Fifth and Sixth Amendments to increase the sentence in this manner.  See *Booker v. United States,* 543 U.S. 220 (2005) (Thomas, J., dissenting).

                    Respectfully submitted,

                    */s/ Marc W. Martin*

RICHARD BEUKE
53 W. Jackson Blvd., Suite 1410
Chicago, IL 60604
(312) 427-3050

WILLIAM GAMBONEY, JR.
216 S. Marion St.
Oak Park, IL 60302
(708) 445-1994

MARC W. MARTIN
MARC MARTIN, LTD.
53 W. Jackson Blvd., Suite 1420
Chicago, IL 60604
(312) 408-1111
*Attorneys for Defendant Jon Burge*

## <u>CERTIFICATE OF SERVICE</u>

I, MARC W. MARTIN, an attorney for Defendant Jon Burge, hereby certify that on this, the 7th day of January, 2011, I filed the above-described document on the CM/ECF system of the United States District Court for the Northern District of Illinois, which constitutes service of the same.

/s/ *Marc W. Martin*

MARC W. MARTIN
MARC MARTIN, LTD.
53 W. Jackson Blvd., Suite 1420
Chicago, IL 60604
(312) 408-1111